S96A0603. ROCKDALE CITIZEN PUBLISHING COMPANY, INC. v. STATE OF GEORGIA et al.
(468 SE2d 764)

HUNSTEIN, Justice.

In *Rockdale Citizen Pub. Co. v. State of Ga.,* 266 Ga. 92 (463 SE2d 864) (1995), this Court reviewed an order of the Superior Court of Rockdale County closing to the press and public all pretrial evidentiary hearings in the pending capital prosecution against Marvin Earl Turner, Jr. A majority of this Court found that there was evidence adduced to support the superior court's conclusion that a clear and present danger existed to Turner's right to a fair trial. Id. at 93 (1). However, because the superior court's order failed to articulate fully its consideration of alternatives to closure, see *R. W. Page Corp. v. Lumpkin,* 249 Ga. 576 (292 SE2d 815) (1982), this Court vacated the order and remanded the case. On remand, the superior court granted Turner's motion for change of venue and directed the case to be heard by a jury selected in Hall County. However, the superior court also ordered closure of all pre-trial evidentiary hearings to everyone except trial participants.[1] The publisher of the local daily newspaper, *The Rockdale Citizen,* appeals to this Court, pursuant to *Lumpkin,* supra at (2). We reverse the superior court because its closure ruling clearly violates this Court's holding in *Lumpkin.*

*Lumpkin* mandates that a motion for closure

be supported at the hearing by the movant by evidence con-

---

[1] The superior court's order provides for closure regardless of whether venue is changed before or after completion of all pre-trial evidentiary hearings.

> stituting "clear and convincing proof" that no means available other than closure of the hearing will serve to protect the right of the movant.

Id. at 580 (5). A review of the record and the superior court's order establishes uncontrovertedly that there was no evidence adduced in this case to support the superior court's finding that there is a "clear and present danger" that Turner will not receive a fair trial before the jurors from the changed-venue county. Instead, the superior court based its finding on speculation regarding the media coverage that might occur in Hall County to which Hall County residents might be exposed and assumed that this speculative coverage would be so inflammatory that Turner's right to a fair trial would be prejudiced in the absence of closure.[2]

Assumptions and speculation cannot provide the "clear and convincing proof" required by *Lumpkin* to justify closure. "Clear and convincing proof" necessarily involves concrete, tangible evidence that can be made part of and attached to the record to enable appellate review of a trial court's decision on an issue of constitutional magnitude. "Closed proceedings, although not absolutely precluded, must be rare and *only for cause shown* that outweighs the value of openness." (Emphasis supplied; footnote omitted.) *Press-Enterprise Co. v. Superior Court of California*, 464 U. S. 501, 509 (104 SC 819, 78 LE2d 629) (1984). Assumptions and speculation can never justify the infringement on First Amendment rights which the closure of criminal proceedings creates.

The superior court explained its closure and venue change rulings by stating that as a result thereof, "the Defendant will have the benefit of a jury pool that will not be privy to pre-trial evidentiary hearings, arguments, and rulings." The Federal and Georgia Constitutions do not entitle a defendant to a jury wholly ignorant of all aspects of the crimes charged and legal proceedings brought against him; rather, a defendant is entitled only to a fair and impartial jury that can render a verdict based solely on the evidence presented in court. See

---

[2] The superior court's order contains, inter alia, the following statements: "Extensive and prejudicial publicity *can* overflow the boundaries of Rockdale County and infect potential jurors in counties where venue may potentially be changed"; "the Atlanta [media] *might well* take notice and begin reporting on the pre-trial hearings . . . [and t]he resulting pretrial publicity *could* infect potential jurors in a vastly larger area than Rockdale County"; "the *possibility* is very real that the new venue *would become* infected by the extensive and inflammatory coverage by the Rockdale media"; "[t]he press from the local media of the county of change of venue *could* obtain the information printed in the Rockdale media and disseminate it . . . , thereby infecting the potential jurors with highly inflammatory information"; "[i]t would be disingenuous to believe that the media outlets in the new venue would not seize upon the juicy details previously covered by the Rockdale County media and immediately run articles based [thereon]." (Emphasis supplied.)

*Irvin v. Dowd*, 366 U. S. 717, 722-723 (81 SC 1639, 6 LE2d 751) (1961); *Chancey v. State*, 256 Ga. 415, 425 (349 SE2d 717) (1986). A criminal defendant's right to a fair trial is not placed in clear and present danger by media coverage of pre-trial hearings that provide the public with accurate, responsible, non-inflammatory reports of the matters raised in those hearings: "pretrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial." *Nebraska Press Assn. v. Stuart*, 427 U. S. 539, 554 (96 SC 2791, 49 LE2d 683) (1976).

Given the change of venue in this case, there exists no evidence to support closure of all pre-trial evidentiary hearings in this capital prosecution, wherever held. The superior court's order closing all pretrial evidentiary hearings in this case is accordingly reversed.

*Judgment reversed. All the Justices concur, except Carley and Thompson, JJ., who concur specially.*

SEARS, Justice, concurring.

Because the public's First Amendment rights, as well as the defendant's right to a public trial, are the very preconditions to our free society and to public confidence in the functioning of our government, courts must guard them with jealous attention and view with suspicion all attempted encroachments thereof. In fact, we must do our very best to hold fast to the values embodied by the First Amendment even in extreme and painful cases, because we cannot suspend it and remain all that we strive to be. The majority, by accepting nothing less than strict compliance with the requirements of *R. W. Page Corp. v. Lumpkin*,[3] correctly "gives greater weight to the value of [these liberties] than to the danger of their misuse."[4] I fully concur.

CARLEY, Justice, concurring specially.

In Rockdale County, Marvin Turner was indicted for murder. Turner and the State moved to close the pre-trial proceedings to the press and public and, after conducting a hearing, the trial court granted the motion. On appeal, however, we vacated the trial court's order and remanded "for consideration of the alternatives to closure." *Rockdale Citizen Pub. Co. v. State of Ga.*, 266 Ga. 92, 94 (1) (463 SE2d 864) (1995). Even though Turner had been granted a change of venue to Hall County in the meantime, the trial court on remand nevertheless entered a new closure order. A majority of this Court now reverses the trial court's renewed closure order and I am constrained

---

[3] 249 Ga. 576 (292 SE2d 815) (1982).

[4] *McIntyre v. Ohio Elections Comm.*, 514 U. S. ___ (115 SC 1511, 1524, 131 LE2d 426) (1995), citing Justice Holmes's dissent in *Abrams v. United States*, 250 U. S. 616, 630-631 (40 SC 17, 63 LE 1173) (1919).

to concur in that judgment of reversal. However, I neither agree with all that is said by the majority nor do I believe that the majority opinion furnishes sufficient guidance for the bench and bar. Accordingly, I must concur specially.

This Court's opinion in the first appeal establishes as the law of the case that, prior to the change of venue, some remedial measure was necessary, because the highly inflammatory pre-trial publicity constituted "clear and convincing proof" of "a clear and present danger" to Turner's right to a fair trial in Rockdale County. *Rockdale Citizen Pub. Co. v. State of Ga.*, supra at 93 (1). Thus, the only question to be addressed by the trial court on remand was whether closure of the pre-trial proceedings was the appropriate remedial measure to protect Turner's right to a fair trial in Rockdale County. In this state, closure is not an available remedy unless there is clear and convincing proof that no other alternative will protect the defendant's right to a fair trial. *Rockdale Citizen Pub. Co. v. State of Ga.*, supra at 93 (1); *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576, 580 (5) (292 SE2d 815) (1982). A change of venue is one of the remedies which must be considered and eliminated before closure is authorized. *Rockdale Citizen Pub. Co. v. State of Ga.*, supra at 93 (1), fn. 1. Because, subsequent to our remand of the case, the trial court ordered a change of venue, the issue which prompted the remand became moot. There was no longer any question as to whether closure was the appropriate remedial measure to protect Turner's right to a fair trial in Rockdale County, since he was facing trial in Hall County.

The trial court nevertheless entered another closure order. As the majority recognizes, the proof that the highly inflammatory pre-trial publicity constituted a clear and present danger to Turner's right to a fair trial in Rockdale County would not support the entry of the new closure order. After changing venue, the trial court was authorized to order closure only upon clear and convincing proof that there was no other alternative to guard against a clear and present danger to Turner's right to a fair trial in Hall County. Because the trial court was aware that the criminal proceedings against Turner already had been a source of highly inflammatory pre-trial publicity in Rockdale County, it is understandable that it would conclude that the change of venue would not obviate the need for closure and that the lurid details of this particular case would continue to be sensationalized by the Hall County media. As the trial court noted, the requirement that Turner actually be exposed to highly inflammatory pre-trial publicity in Hall County could result in "a cycle of venue changes in an effort to stay one step ahead of prejudicial media coverage." Accordingly, I cannot agree with the majority that the trial court's entry of the closure order now on appeal "clearly violates this Court's holding in *Lumpkin*." To the contrary, I find that the trial court's comprehen-

sive new order reflects a conscientious effort on its part to follow the mandate of *Lumpkin* by balancing the right of the press and public to an open trial against Turner's constitutional right to a fair trial.

Nevertheless, it is the established law of this state that a trial court has exceedingly limited discretion in ordering closure "because our constitution commands that open hearings are the nearly absolute rule and closed hearings the very rarest of exceptions." *R. W. Page Corp. v. Lumpkin*, supra at 579 (4). Accordingly, I have to agree with the majority that Turner and the State failed to produce "clear and convincing proof" that closure was the only means by which a "clear and present danger" to his right to a fair trial in Hall County could be avoided. A viable concern that Turner's right to a fair trial in Hall County might be violated by future highly inflammatory publicity did not authorize the trial court's present denial of the right of the press and public to access to the criminal proceedings pending against Turner in that county. Accordingly, I reluctantly concur in the majority's judgment of reversal.

I would hasten to add, however, that our holding does not prohibit the trial court from ordering closure at some future date. *R. W. Page Corp. v. Lumpkin*, supra at 580 (5), fn. 11, provides that "it would be less burdensome for the movant to justify the closure motion in a pre-trial hearing due to the absence of some alternatives at this stage of the proceedings." This holding in *Lumpkin* must mean something and is not without relevance in this case. Accordingly, if the perceived threat of highly inflammatory pre-trial publicity in Hall County actually comes to pass, either or both parties could file a new motion to close proceedings. At that time the trial court would be authorized to consider such a motion and to grant it if "clear and convincing proof" is produced showing that closure is the only means by which "a clear and present danger" to Turner's right to a fair trial in Hall County could be avoided.

I am authorized to state that Justice Thompson joins in this special concurrence.

DECIDED APRIL 15, 1996.

*Heyman & Sizemore, William H. Major, William B. Brown,* for appellant.

*Cheryl F. Custer, District Attorney, Calvin A. Leipold, Jr., Martin & McGuire, John J. Martin, Jr.,* for appellees.

*Gerald R. Weber, Alston & Bird, Amy R. Wolverton, Hull, Towill, Norman & Barrett, David E. Hudson, James B. Ellington, Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, Dow, Lohnes & Albertson, Peter C. Canfield, James A. Demetry, James W.*

*Kimmell, Jr.,* amici curiae.